UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KAREEM D.,

       **Plaintiff,**

       v.

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

       **Defendant.**

Case No. 2:19-cv-18359
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Kareem D. for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Acting Commissioner of Social Security denying Plaintiff's application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.    PROCEDURAL HISTORY**

On March 27, 2015, Plaintiff filed an application for SSI benefits,[2] alleging that he has been disabled since July 1, 2011. R. 271–74. The application was denied initially and upon

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

[2] On the same day, Plaintiff also filed an application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., which he later withdrew. R. 125, 132, 271–74.

reconsideration. R. 166–70, 172–77. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 178–81. Administrative Law Judge ("ALJ") Donna Krappa held hearings on November 8, 2017, and April 12, 2018, at which Plaintiff, who was represented by counsel, testified; a vocational expert testified at the second hearing. R. 37–121. In a decision dated September 6, 2018, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 27, 2015, the date on which the application for SSI benefits was filed, through the date of that decision. R. 18–31. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on July 22, 2019. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 6, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 12.[3] On the same day, the case was reassigned to the undersigned. ECF No. 13. The matter is now ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

3

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected."  *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is

> supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See, e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

B.     **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f).

6

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.   ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 34 years old on the date on which the application was filed. R. 30. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between March 27, 2015, the date on which the application was filed, and the date of the decision. R. 21.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: hypertension; a history of seizure disorder; migraine headaches; obesity (under medical guidelines); a mild neurocognitive disorder due to a traumatic brain injury in childhood; bipolar disorder; and a history of polysubstance abuse. *Id.* The ALJ also found that Plaintiff's back impairment and Hepatitis C were not severe. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 21–24.

At step four, the ALJ found that Plaintiff had the RFC to perform work at all exertional levels subject to various additional limitations. R. 24–29. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a truck driver helper. R. 29.

At step five, the ALJ found that a significant number of jobs–*i.e.*, approximately 33,000

7

jobs as a presser; approximately 249,000 jobs as a dishwasher; approximately 524,000 jobs as a hand packager—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 30. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 27, 2015, the application date, through the date of the decision. R. 31.

Plaintiff disagrees with the ALJ's findings at steps three, four, and five and claims a denial of his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. He asks that the decision of the Acting Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 22; *Plaintiff's Reply Brief*, ECF No. 28. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 25.

**IV.   RELEVANT MEDICAL EVIDENCE**

On June 19, 2018, Robert Rekker, Psy.D., conducted a consultative psychological examination. R. 661–75. At the time of the examination and testing, Plaintiff was 37 years old. R. 661. His history included placement in foster care from ages 7 through 18, and special education classes from age 10, when Plaintiff suffered a gunshot wound to the head. *Id*. Plaintiff had lived in a shelter for the six years prior to the examination. *Id.* Plaintiff reported that he had been psychiatrically hospitalized between five and seven times. R. 662. Plaintiff also reported that he had been sober for seven years, although he stated that he began using alcohol around age 19 and had used crack cocaine on a daily basis from approximately 2001 to 2009. *Id*.

Upon mental status examination, Dr. Rekker noted that Plaintiff's grooming and hygiene appeared intact. R. 663. He was forthcoming with information; his speech was normal but his affect was restricted. *Id*. He was oriented to person and place but incorrectly stated the date as July 17 instead of July 19. *Id*. Plaintiff's fund of information was good and he denied suicidal and homicidal ideation. *Id*. No psychotic features were observed. *Id*. Plaintiff appeared cooperative, alert, and attentive. R. 670. He made a good effort and had no difficulty focusing or remaining on task. *Id*. On the Wechsler Adult Intelligence Scale – 4th Edition ("WAIS-4"), Plaintiff's full scale IQ score was 70, a score that Dr. Rekker considered to be accurate. R. 668. Dr. Rekker diagnosed borderline intellectual functioning, *id*., bipolar disorder, alcohol use disorder in sustained remission, cocaine use disorder in sustained remission, and mild neurocognitive disorder due to traumatic brain injury. R. 663. Plaintiff's prognosis was fair and Dr. Rekker noted that Plaintiff "appears to be benefiting from current treatment interventions." *Id*. Dr. Rekker summarized his findings as follows:

> On the WAIS-4, [Plaintiff's] overall performance placed him within the Borderline Intellectual Functioning range. No significant discrepancies were observed between subtest scores. [Plaintiff] demonstrated a borderline deficit in his ability to quickly and correctly scan, sequence or discriminate simple visual information. A borderline deficit was observed in verbal concept formation, verbal reasoning and knowledge acquired from one's environment. His ability to temporarily retain information in memory, perform some mental operation or manipulation and produce a result fell within the borderline deficit range. A borderline deficit was also observed in perceptual and fluid reasoning, spatial processing and visual-motor integration. Daily living skills and adaptive functioning appeared generally good and did not suggest the need for additional supports in the community. [Plaintiff] appears capable of managing his own finances.

R. 671.

Dr. Rekker also completed a Medical Source Statement on June 19, 2018. R. 664–66, 672–74. After indicating that Plaintiff's ability to understand, remember, and carry out instructions were impacted by impairment, Dr. Rekker went on to assess Plaintiff's restrictions

9

for certain mental work-related activities. R. 664, 672.[4] According to Dr. Rekker, Plaintiff had mild limitations in his abilities to understand, remember, and carry out simple instructions; moderate limitations in his abilities to make judgments on simple work-related decisions and to understand, remember, and carry out complex instructions; and a marked limitation in his ability to make judgments on complex work-related decisions. R. 664, 672. In support of these opinions, Dr. Rekker stated as follows:

> Mr. D[.] is responsible for sweeping and closing up the church and even though these tasks are routine, he is still called back to correct mistakes and oversights he has made. He becomes anxious when he must exercises [sic] his judgment because he is fearful of making mistakes and being called stupid. He can become overwhelmed easily and he will abandon tasks and walk off.

R. 664.

> Mr. D[.] has difficulty remembering scheduled tasks that he completes as part of a daily routine and shelter staff must frequently ask him to redo things or address his errors. He requires frequent reminders and tasks must be [left blank.] He prefers tasks in which he is directly told what to do because he has difficulty making decisions.

R. 672.

Dr. Rekker also indicated that Plaintiff's ability to interact appropriately with supervisors,

---

[4] Dr. Rekker used the following rating terms when assessing Plaintiff's limitations:

> • None - Absent or minimal limitations. If limitations are present they are transient and/or expected reactions to psychological stresses.
> • Mild - There is a slight limitation in this area, but the individual can generally function well.
> • Moderate - There is more than a slight limitation in this area but the individual is still able to function satisfactorily.
> • Marked - There is serious limitation in this area. There is a substantial loss in the ability to effectively function.
> • Extreme -There is major limitation in this area. There is no useful ability to function in this area.

R. 664, 672.

10

co-workers, and the public, as well as respond to changes in a routine work setting were affected by his mental impairment. R. 665. According to Dr. Rekker, Plaintiff had no limitation in his ability to interact appropriately with the public; moderate limitations in his ability to interact appropriately with supervisors; and marked limitations in his abilities to interact appropriately with co-workers and respond appropriately to usual work situations and to changes in a routine work setting. *Id*. In support of this assessment, Dr. Rekker stated as follows:

> Mr. D[.] is uncomfortable approaching supervisors because of fears they will call him "stupid" because he makes frequent mistakes. He often feels as if co-workers are "trying to get over on [him]." He can become confrontational if he believes he is being treated unfairly or if he is asked to do something outside his ordinary routine.

R. 665.

> Mr. D[.] becomes frustrated by changes in his routine and he can become confrontational if he is asked to do something out of the ordinary for fear that he will make an error. He expressed concerns that co-workers take advantage of him and he can be confrontational at times.

R. 673. Asked whether Plaintiff's drug and/or substance abuse contributed to his limitations, Dr. Rekker responded, "No. [Plaintiff] has been sober for seven years." *Id*.

## V. DISCUSSION

Plaintiff argues, *inter alia*, that the ALJ failed to properly consider the mental limitations found by Dr. Rekker. *Plaintiff's Brief*, ECF No. 22, pp. 26–28; *Plaintiff's Reply Brief*, ECF No. 28, pp. 7–9. This failure, Plaintiff argues, resulted in an RFC that is not supported by substantial evidence. *Id*. This Court agrees.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 416.945(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining

11

physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer,* 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform work at all exertional levels, but with certain additional limitations, as follows:

> After careful consideration of the entire record, I find that the claimant is capable of the exertional demands of work at all exertional levels as defined under the Regulations. Moreover, he is only able to perform jobs: that require no use of ladders, ropes, or scaffolds; that require only occasional use of ramps or stairs; and that require no exposure to unprotected heights, hazards or dangerous machinery. The claimant is able to perform unlimited balancing, stooping, kneeling, crouching, and/or crawling. Furthermore, as to the mental demands of work, I find that the claimant is able to perform jobs: that are simple and repetitive; *and that require only occasional contact with supervisors and the general public*. The claimant is able to follow one to two-step instructions for two-hour periods with a short break of three to five minutes in between periods.

R. 24 (emphasis added). In making this determination, the ALJ specifically considered the opinions of, *inter alios*, Dr. Rekker, the consultative examiner, and assigned them "partial weight," reasoning as follows:

> On June 19, 2018, the claimant underwent a mental health consultative examination and cognitive testing with Robert Rekker, Psy.D. (Exhibits B8F-B9F). Dr. Rekker noted that the claimant had taken public transportation to the examination (Exhibit B8F at 1). The claimant reported that he frequently felt depressed and upset and Dr.

12

>Rekker observed him to have a restricted affect (Id. at 2-3). Dr. Rekker opined: that the claimant had no limitations in interacting with the public; that he had only mild limitations in understanding, remembering, and carrying out simple instructions; that he had moderate limitations in understanding, remembering, and carrying out complex instructions, and in interacting with supervisors; and that *he had marked limitations in interacting with co-workers,* responding to usual work situations and changes to the work setting, and in making judgments with respect to complex work-related decisions (Id. at 4-5). Dr. Rekker further opined that the claimant would be capable of managing his own benefits (Id. at 6). With respect to cognitive testing, the claimant was administered the Wechsler Adult Intelligence Scale-Fourth Edition, in which he received a full scale IQ score of 70 and was deemed to have borderline intellectual functioning (Exhibit 9F at 1-3). *I give Dr. Rekker's opinion partial weight*. In making this finding, I note that Dr. Rekker specializes in psychology and personally evaluated the claimant. Moreover, as a psychological consultant for the Agency, Dr. Rekker is familiar with the requirements of the disability program. However, his opinion has been given only partial weight, as he only examined the claimant on one occasion and his findings were not consistent with those of the treating providers, who did not indicate cognitive deficits, and who consistently noted in addition that the claimant's bipolar disorder was stable and controlled with medication.

R. 28 (emphasis added).

In challenging this determination, Plaintiff notes that Dr. Rekker's opinions included the opinion that Plaintiff had a marked limitation in his ability to interact with co-workers. Yet the ALJ, who gave "partial weight" to Dr. Rekker's opinions, crafted a mental RFC that provided for occasional contact with supervisors and the general public but did not account for any limitation in connection with co-workers, R. 24. *Plaintiff's Brief*, ECF No. 22, pp. 26−28; *Plaintiff's Reply Brief*, ECF No. 28, pp. 7−9. Plaintiff argues that this omission, combined with the failure to explain this omission, requires remand. *Plaintiff's Brief*, ECF No. 22, pp. 26−28; *Plaintiff's Reply Brief*, ECF No. 28, pp. 7−9. The Commissioner does not respond specifically to this argument and instead generally asserts that substantial evidence supports the ALJ's RFC determination for, *inter alia*, "only occasional contact with supervisors and the general public[.]" *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 25, p. 26.

Plaintiff's argument is well taken. "The public, supervisors, and co-workers are distinct groups, and are separately addressed on the mental RFC forms. Thus, limitations on one type of interaction in the RFC does not account for limitations on the others." *Grinolds v. Colvin*, No. 15-30, 2015 WL 5178184, at *2 (W.D. Pa. Sept. 4, 2015); *see also Michelle A. v. Saul*, No. 19-CV-00991-MJR, 2020 WL 7223235, at *5 (W.D.N.Y. Dec. 8, 2020) ("The public, supervisors, and co-workers are distinct groups, and are separately addressed on the [Commissioner's] mental residual capacity forms. Thus, limitations on two of these types of interactions does not account for limitations on the third.") (internal quotation marks and citations omitted). Notably, "an inability to appropriately interact with or respond to criticism from supervisors is distinct from an inability to interact with either coworkers or the public. Indeed, the Social Security regulations treat the abilities to respond appropriately to 'supervision' and to get along with 'coworkers" as separate aspects of the 'basic mental demands' of unskilled work, noting that the 'substantial loss of ability to meet' any basic mental demand could 'severely limit the potential occupational base.'" *Melissa R. v. Berryhill*, No. 2:17-cv-07716, 2018 WL 6507898, at *4 (C.D. Cal. Dec. 11, 2018) (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)); *see also Tschannen v. Colvin*, No. 15-182, 2015 WL 7012531, at *1–2 (W.D. Pa. Nov. 12, 2015) ("[I]t is unclear how the RFC accommodates Plaintiff's moderate social limitations assigned by Dr. Brace and Dr. Newman. Those limitations were, apparently, accepted by the ALJ, but the RFC includes limitations relating only to supervisors and the public. . . . While the ALJ is certainly entitled to exclude limitations from an RFC, he must explain why is doing so."). Although the ALJ specifically found that Plaintiff should have only occasional interaction with supervisors and the public, his decision was silent as to any limitation in Plaintiff's ability to interact with co-workers. R. 24. Moreover, the ALJ failed to explain this omission. R. 24–29. This omission and failure to

explain take on even greater significance when one considers that the vocational expert, upon whose testimony the ALJ relied, was asked to assume a claimant who is limited only in his ability to interact with supervisors and the public. R. 30, 110–12.

The ALJ's failure to include a limitation relating to interaction with co-workers, combined with the failure to explain why interaction with co-workers was apparently not limited despite assigning "partial weight" to Dr. Rekkin's opinion of a marked limitation in interacting with co-workers, R. 24, 28, therefore cannot be viewed as harmless. *Nickens v. Colvin*, No. 14-140, 2014 WL 4792197, at *1–2 (W.D. Pa. Sept. 23, 2014) ("This omission infects the hypothetical to the vocational expert, which, in this case, did not include a reference to interaction with supervisors. . . . This matter must be remanded so that the ALJ may address whether he rejected this limitation, or, if he failed to consider it, to do so.") (citations omitted); *Capo v. Comm'r of Soc. Sec.*, No. CV 2:17-1280, 2018 WL 5982435, at *4 (W.D. Pa. Nov. 13, 2018) (remanding action where the "Plaintiff correctly argues that the ALJ's RFC finding [that limited the plaintiff, *inter alia*, to only occasional public interaction, but containing no similar restrictions as to Plaintiff's interactions with supervisors and/or co-workers] appears inconsistent with his acceptance of Dr. Marion's moderate limitations, specifically, the moderate limitation on interactions with supervisors and/or co-workers. Although the ALJ is entitled to reject limitations that are unsupported by the record, he must provide the reasons for discounting that evidence"); *Tschannen*, 2015 WL 7012531, at *1–2. Accordingly, considering this inconsistency and the ALJ's failure to explain this inconsistency, this Court cannot conclude that substantial evidence supports the ALJ's RFC finding. *See id.*; *Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that

access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

This Court concludes that remand of the matter for further consideration is appropriate even if, upon further examination of these issues, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision."). The Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of this issue.[5]

## VI. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

---

[5] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Rekker's opinions and the RFC, the Court does not consider those claims.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date: October 14, 2021                     *s/Norah McCann King*
                                                        NORAH McCANN KING
                                        UNITED STATES MAGISTRATE JUDGE